AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>The cellular telephone assigned call number<br>(206) 430-8643, with IMSI 310260627576408 | )<br>)<br>)<br>)<br>)<br>)    Case No. **MJ19-061** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A, incorporated herein by reference. Because the government has satisfied the requirements of 18 U.S.C. § 3122, this warrant also constitutes an order under 18 U.S.C. § 3123.

located in the _____ Western _____ District of _____ Washington _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) & 846 | Conspiracy to distribute controlled substances |

The application is based on these facts:
See affidavit in support of search warrant. To ensure technical compliance with 18 U.S.C. §§ 3121-3127, the warrant will also function as a pen register order. I thus certify that the information likely to be obtained is relevant to an ongoing criminal investigation conducted by the DEA. See 18 U.S.C. §§ 3122(b), 3123(b).

☑ Continued on the attached sheet.

☑ Delayed notice of _____ days (give exact ending date if more than 30 days: _05/07/2019_ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Geoffrey Provenzale, Special Agent (DEA)
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Feb. 7, 2019

_____
*Judge's signature*

City and state: Seattle, Washington

Hon. Mary Alice Theiler, United States Magistrate Judge
*Printed name and title*

# ATTACHMENT A

## Property to Be Searched

1.    The cellular telephone assigned call number (206) 430-8643, with International Mobile Subscriber Identity ("IMSI") 310260627576408, with listed subscriber "Executive Transportation and Services, 6900 132nd PL SE Apt 5-405 Newcastle, WA," ("**Target Telephone 1**" or "**TT1**"), whose service provider is T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey.

2.    Records and information associated with **Target Telephone 1** that is within the possession, custody, or control of T-Mobile, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

ATTACHMENT A
2019R00130

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

**ATTACHMENT B**

2  **I.     Information to be Disclosed by the Provider**

3         All information about the location of **Target Telephone 1** described in Attachment

4  A for a period of thirty days, during all times of day and night.  "Information about the

5  location of **Target Telephone 1**" includes all available E-911 Phase II data, GPS data,

6  latitude-longitude data, and other precise location information, as well as all data about

7  which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors"

8  (i.e., faces of the towers) received a radio signal from the cellular telephone described in

9  Attachment A.

10        To the extent that the information described in the previous paragraph (the

11  "Location Information") is within the possession, custody, or control of T-Mobile, T-

12  Mobile is required to disclose the Location Information to the government.  In addition, T-

13  Mobile must furnish the government all information, facilities, and technical assistance

14  necessary to accomplish the collection of the Location Information unobtrusively and with

15  a minimum of interference with T-Mobile's services, including by initiating a signal to

16  determine the location of **Target Telephone 1** on T-Mobile's network or with such other

17  reference points as may be reasonably available, and at such intervals and times directed

18  by the government.  The government shall compensate T-Mobile for reasonable expenses

19  incurred in furnishing such facilities or assistance.

20        This warrant does not authorize the seizure of any tangible property.  In approving

21  this warrant, the Court finds reasonable necessity for the seizure of the Location

22  Information.  *See* 18 U.S.C. § 3103a(b)(2).

23  **II.    Information to be Seized by the Government**

24        All information described above in Section I that constitutes evidence of violations

25  of 21 U.S.C. §§ 841(a)(1) and 846, involving Darren Singh.

26

27

28

ATTACHMENT B
2019R00130

**AFFIDAVIT OF GEOFFREY PROVENZALE**

STATE OF WASHINGTON       )
                                       )
COUNTY OF KING                )

I, Geoffrey Provenzale, having been duly sworn, state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **(206) 430-8643**, with International Mobile Subscriber Identity ("IMSI") 310260627576408, with listed subscriber "Executive Transportation and Services, 6900 132nd PL SE Apt 5-405 Newcastle, WA," (hereinafter "Target Telephone 1" or "**TT1**"), whose service provider is T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey. **TT1** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.     Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3.     I am a Special Agent (SA) with the United States Drug Enforcement Administration (DEA), and have been so employed since April 2015. I am currently assigned to the Seattle Field Division. In this capacity, I investigate violations of the Controlled Substances Act, Title 21, United States Code, Section 801 et seq., and related offenses. I have received specialized training in the enforcement and investigation of the Controlled Substances Act. I have received over 620 hours of classroom training including but not limited to, drug identification, drug interdiction, detection, money laundering

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

techniques and schemes, smuggling, and the investigation of individuals and/or organizations involved in the illegal possession, possession for sale, sales, importation, smuggling, cultivation, manufacturing and illicit trafficking of controlled substances.

4.    In my role as a Special Agent, I have negotiated for and purchased narcotics acting in an undercover capacity. I have participated in narcotics investigations (i.e., heroin, fentanyl, cocaine, marijuana, and methamphetamine) that have resulted in the arrest of individuals and the seizure of illicit narcotics and/or narcotic-related evidence and the forfeiture of narcotics related assets. I have been involved in the service of search warrants as part of these investigations. As a result of my experience in serving these search warrants, I have encountered and have become familiar with various tools, methods, trends, paraphernalia and related articles utilized by various traffickers in their efforts to import, conceal, and distribute controlled substances. I am also familiar with the various methods of packaging, delivering, transferring, and laundering drug proceeds. Additionally, through my training and experience, I can identify illegal drugs by sight, odor, and texture.

5.    I have written affidavits in support of court authorized federal warrants and orders in the Western District of Washington for T-III interceptions, GPS tracking of telephones, search warrants, and tracking of vehicles. Additionally, I have testified in grand jury proceedings, written investigative reports, and conducted and participated in numerous interviews of drug traffickers of various roles within drug organizations, which has provided me with a greater understanding of the methods by which drug trafficking organizations operate.

6.    The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7.    Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) and 846, relating to distribution of controlled substances, have been committed, are being committed, and/or will be committed by Darren Singh. There is also probable cause to believe that the location information

Affidavit of SA Provenzale - 2
2019R00130

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  described in Attachment B will constitute evidence of these criminal violations, and will

2  lead to the identification of individuals who are engaged in the commission of these

3  offenses.

4         8.     The court has jurisdiction to issue the proposed warrant because it is a "court

5  of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a

6  district court of the United States that has jurisdiction over the offense being investigated,

7  *see* 18 U.S.C. § 2711(3)(A)(i).

8                        **PROBABLE CAUSE**

9        9.     The United States, including the DEA, is conducting a criminal investigation

10  of Darren Singh regarding possible violations of 21 U.S.C. §§ 841(a)(1) and 846.  In

11  December 2018, a confidential source (CS1)[1] informed law enforcement he/she was aware

12  of a narcotics trafficker selling large quantities of MDMA in Western Washington.  CS1

13  identified the narcotics trafficker to investigators as Darren Singh.  CS1 stated to

14  investigators that Singh generally has access to ten kilograms of MDMA at any given time.

15  CS1 also provided (253) 226-1137 (hereinafter "TT2") as a contact number for Singh.

16        10.    During December 2018, a recorded phone call was placed from CS1 to TT2,

17  believed to be utilized by Singh.  During the phone call, a male answered TT2, who CS1

18  later stated he/she knew to be Singh.  CS1 inquired about Singh's availability, and trying

19  to set "it" up for a weekend.  Singh asked CS1, "They want three you said?"  CS1 replied

20  they wanted three or five but that CS1 was trying to work it out.  Singh replied, "Ok no

21  problem."  Based on my training and experience, I believe when CS1 was inquiring about

22  Singh's availability and stated he/she was attempting to set "it" up for a weekend, Singh

23  believed CS1 was referring to a narcotics transaction with potential customers.  I also

24  believe when Singh inquired if the customers wanted "three" he was asking CS1 if the

25  customers wanted three kilograms of a narcotics substance, in this instance MDMA.

26

27  ───────────────

28  [1] CS1 was recently arrested on a state narcotics violation and is cooperating with investigators
under an active cooperation agreement with Seattle Police Department.  In addition to the recent
narcotics arrest, an NCIC check revealed CS1 has an arrest history that includes felony arrests for
narcotics offenses and possession of a stolen firearm.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

11.     On December 21, 2018, King County Superior Court Judge Patrick Oishi signed a state tracking warrant authorizing the real time GPS location tracking of TT2. Initial tracking data for TT2 showed the phone was located near 6900 132nd PL SE, Newcastle, WA.   According to the Washington Department of Licensing (WA DOL), "Darren Arvin Singh" lists 6900 132nd PL SE Apt 5-405, Newcastle, WA as his residence on his Washington driver's license.   Initially, TT2 did not appear to move from the area of the aforementioned address.   I believe this indicated that Singh had traveled somewhere and had left TT2 behind.

12.     On December 26, 2018, investigators received notification from U.S. Customs and Border Protection (CBP) that Darren Singh had crossed into the U.S. from Canada.   CBP advised that Singh had stated to CBP he was residing at 6900 132nd PL SE Apt 5-405, Newcastle, WA, and provided **206-430-8643 (TT1)** as his phone number.   Upon Singh's return from Canada, TT2 began to "ping" at locations other than Singh's suspected residence, indicating Singh had begun to carry it with him.

13.     During the first week of January 2019, CS1 stated that Singh had contacted him/her and had told CS1 that he was ready to complete the previously arranged narcotics transaction.   According to CS1, Singh also stated that the narcotics were in another car that was nearby, waiting for Singh to call.   CS1 advised Singh he/she would be ready later in the day.   CS1 and Singh agreed to meet later in the day at a Casino, located in Tukwila, WA, between 2:30 p.m. and 3:00 p.m.

14.     On the same date, at approximately 11:45 a.m., investigators established surveillance in the area of TT2.    Electronic tracking data for TT2 showed TT2 was "pinging" near a restaurant in Tukwila, WA.   Upon arrival in the area of the "ping," investigators located a Honda Accord (WA/ANV4168) investigators previously had observed Singh driving during this investigation.

15.     At approximately 11:58 a.m., investigators observed Singh meeting with an unidentified Hispanic male (UM1) in a Best Buy parking lot, located at 17364 Southcenter Parkway, Tukwila, WA.   Singh had traveled to the Best Buy in the Accord.

Affidavit of SA Provenzale - 4
2019R00130

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

16.     At approximately 12:01 p.m., Singh and UM1 separated.    Investigators observed UM1 enter into the Best Buy, and Singh depart the area in the Accord.    At approximately 12:14 p.m., investigators observed UM1 enter into a KIA sedan (WA/ARP9660) after UM1 had exited the Best Buy.    The KIA then departed the area.    At approximately 12:48 p.m., investigators located the KIA sedan at Southcenter mall on top of a parking garage.    Surveillance was maintained on the KIA.    According to WA DOL, the KIA is registered to "Camilo Castano."

17.     Based on my training and experience, I believe UM1 was in possession of the narcotics CS1 was "ordering" through Singh.    I further believe that Singh was meeting with UM1 to inform him that the narcotics transaction would happen later in the afternoon.

18.     At approximately 2:00 p.m., CS1 and Singh met.    CS1 relayed to investigators that Singh had called the individual delivering the narcotics, and instructed that individual to go to a nearby Jack in the Box to conduct the transaction.    At approximately 2:17 p.m., investigators observed UM1 enter the KIA and depart the parking garage.    Investigators maintained surveillance on the KIA.    At approximately 2:25 p.m., I observed the KIA arrive at a Jack in the Box restaurant located at 16400 W. Valley Hwy, Tukwila, WA.    Shortly thereafter, the KIA departed the Jack in the Box without meeting with any individuals.    Several minutes later, the KIA drove to a Value Village, located at 16700 Southcenter Parkway, Tukwila, WA.    This location is adjacent to a Double Tree hotel.    At this approximate time, CS1 informed investigators that Singh had changed the meet location to the Double Tree.

19.     At approximately 2:40 p.m., UM1 was observed at the trunk of the KIA by investigators.    Seattle Police Department (SPD) officers then detained UM1 at the trunk of the KIA.    UM1 was identified as Camilo Castano-Villegas.    After Castano-Villegas was detained investigators observed his phone ringing.    The number displayed was 253-226-1137 (TT2).

20.     Castano-Villegas was read his *Miranda* Warnings by investigators, and he stated he understood them to investigators.    Castano-Villegas then signed a consent to search of his vehicle.    Investigators searched his vehicle while he was present and located

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  approximately four kilograms of MDMA within the KIA.  Investigators later field tested
2  the narcotics with positive results for MDMA.

3      21.     To investigators' knowledge, Singh has only communicated with CS1 and
4  Castano-Villegas using TT2.  Toll analysis of TT2 from the period of January 7, 2019,
5  through January 13, 2019, reveals that TT2 was in communication with six unique phone
6  numbers during that time period.  Four of the phone numbers have area codes from the
7  state of Washington.

8      22.     During the same time period, toll analysis of **TT1** reveals that **TT1** was in
9  communication with 77 unique phone numbers.  Over a third of the phone numbers
10 contacted are area codes used outside of the state of Washington.

11     23.     I believe both **TT1** and TT2 are utilized by Darren Singh.  Washington State
12 Department of Revenue indicates that the subscriber for **TT1**, "Executive Transportation
13 and Services," is the name of a business that was governed by "Darren Singh."  The
14 business license for Executive Transportation and Services expired on April 30, 2017,
15 becoming inactive during September 2017.  In addition to providing **TT1** as a contact
16 number upon returning to the U.S. from Canada, Singh appears to utilize **TT1** much more
17 frequently and contact more individuals on **TT1** than on TT2.

18     24.     Singh often appears to leave TT2 at his residence, making it difficult to track
19 Singh's movements.  In an effort to mitigate this, on January 26, 2018, investigators
20 installed a tracking device, pursuant to state court order, on Singh's Accord.  However,
21 since installation of the device, Singh has not used the Accord to the extent he did
22 previously.

23     25.     During the week of January 27, 2019, TT2 has not left the area of Singh's
24 known apartment in Newcastle, WA.  However, the phone has remained powered on until
25 recently.  I believe Singh has been traveling via a different vehicle, and has left TT2 at
26 home for extended periods of time.  As stated above, during December 2018, Singh left
27 TT2 at home and took **TT1** with him to Canada.  **TT1** has also been active since 2012
28 indicating that Singh has used **TT1** for a long period of time and that it may be his
"primary" phone or a phone he uses with more trusted individuals.  CS1 and law

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 │ enforcement databases indicate Singh is part of a larger organization that traffics narcotics
2 │ from Mexico, through the U.S., to Canada.  **TT1** communicates with numerous numbers
3 │ with area codes from out of state to include numbers with area codes from Toronto,
4 │ Vancouver B.C., New York City, and California.

5 │      26.     Based on my training and experience, it is common for narcotics traffickers
6 │ to use more than one phone.  At times, narcotics traffickers will utilize separate phones for
7 │ multiple reasons such as using one phone for trusted individuals, and another for those who
8 │ the trafficker believes he cannot trust.  In addition, at times traffickers will segregate
9 │ phones for "business" (trafficking in narcotics) and use a separate phone for friends and
10 │ family.  I further believe, due to the frequency with which Singh now utilizes **TT1** as
11 │ compared to TT2,  Singh is still in possession of **TT1,** and tracking **TT1** will allow
12 │ investigators to better observe Singh and his unlawful activities.

13 │      27.     In my experience, drug traffickers frequently make use of cellular telephones
14 │ to arrange their drug transactions.  Drug traffickers often discontinue the use of these
15 │ cellular telephones on a frequent basis in order to thwart law enforcement efforts at
16 │ detection.  It is also my experience that telephone location data is useful in corroborating
17 │ movements of targets, especially suspected drug traffickers.  When used in conjunction
18 │ with physical surveillance, telephone location data is useful to identify vehicles, locations,
19 │ and individuals involved in ongoing drug trafficking schemes.  Additionally, telephone
20 │ location data can show that a target telephone is used by a particular individual by
21 │ connecting physical surveillance of that individual with evidence of the telephone's use.
22 │ Telephone location data therefore often provides evidence utilized in the seizure of
23 │ narcotics and the fruits and instrumentalities of narcotics trafficking.

24 │      28.     In my training and experience, I have learned that T-Mobile is a company
25 │ that provides cellular telephone access to the general public.  I also know that providers of
26 │ cellular telephone service have technical capabilities that allow them to collect and
27 │ generate information about the locations of the cellular telephones to which they provide
28 │ service, including E-911 Phase II data, also known as GPS data or latitude-longitude data

and cell-site data, also known as "tower/face information" or cell tower/sector records.  E-

Affidavit of SA Provenzale - 7
2019R00130

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

29.     Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of **TT1**, including by initiating a signal to determine the location of **TT1** on T-Mobile's network or with such other reference points as may be reasonably available.

30.     Based on my training and experience, I know that T-Mobile can collect cell-site data about **TT1**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

**AUTHORIZATION REQUEST**

31.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

32.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to

Affidavit of SA Provenzale - 8
2019R00130

1  delay notice until 90 days after the collection authorized by the warrant has been
2  completed.  There is reasonable cause to believe that providing immediate notification of
3  the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing
4  immediate notice to the subscriber or user of **TT1** would seriously jeopardize the ongoing
5  investigation, as such a disclosure would give that person an opportunity to destroy
6  evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See*
7  18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into
8  the warrant, the proposed search warrant does not authorize the seizure of any tangible
9  property.  *See* 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes
10 the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or
11 any stored wire or electronic information, there is reasonable necessity for the seizure for
12 the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

13      33.   I further request that the Court direct T-Mobile to disclose to the government
14 any information described in Attachment B that is within the possession, custody, or
15 control of T-Mobile.  I also request that the Court direct T-Mobile to furnish the
16 government all information, facilities, and technical assistance necessary to accomplish the
17 collection of the information described in Attachment B unobtrusively and with a minimum
18 of interference with T-Mobile's services, including by initiating a signal to determine the
19 location of **TT1** on T-Mobile's network or with such other reference points as may be
20 reasonably available, and at such intervals and times directed by the government.  The
21 government shall reasonably compensate T-Mobile for reasonable expenses incurred in
22 furnishing such facilities or assistance.

23      34.   I further request that the Court authorize execution of the warrant at any time
24 of day or night, owing to the potential need to locate **TT1** outside of daytime hours.

25      35.   I further request that the Court order that all papers in support of this
26 application, including the affidavit and search warrant, be sealed until further order of the
27 Court.  These documents discuss an ongoing criminal investigation that is neither public
28 nor known to all of the targets of the investigation.  Accordingly, there is good cause to

Affidavit of SA Provenzale - 9
2019R00130

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  seal these documents because their premature disclosure may seriously jeopardize that
2  investigation.

3  **CONCLUSION**

4  36.  Based on the foregoing, I submit there is probable cause to believe that
5  violations of 21 U.S.C. §§ 841(a)(1) and 846, relating to distribution of controlled
6  substances, have been committed, are being committed, and/or will be committed by
7  Darren Singh.  There is also probable cause to believe that the location information
8  described in Attachment B will constitute evidence of these criminal violations, and will
9  lead to the identification of individuals who are engaged in the commission of these
10 offenses.

GEOFFREY PROVENZALE
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me this 7 day of February, 2019.

MARY ALICE THEILER
United States Magistrate Judge

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A**

**Property to Be Searched**

1.     The cellular telephone assigned call number (206) 430-8643, with International Mobile Subscriber Identity ("IMSI") 310260627576408, with listed subscriber "Executive Transportation and Services, 6900 132nd PL SE Apt 5-405 Newcastle, WA," ("**Target Telephone 1**" or "**TT1**"), whose service provider is T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey.

2.     Records and information associated with **Target Telephone 1** that is within the possession, custody, or control of T-Mobile, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

ATTACHMENT A
2019R00130

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT B**

**I.      Information to be Disclosed by the Provider**

All information about the location of **Target Telephone 1** described in Attachment A for a period of thirty days, during all times of day and night.  "Information about the location of **Target Telephone 1**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (the "Location Information") is within the possession, custody, or control of T-Mobile, T-Mobile is required to disclose the Location Information to the government.  In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of **Target Telephone 1** on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).

**II.     Information to be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846, involving Darren Singh.

ATTACHMENT B
2019R00130

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970